THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SCOTT RAY BISHOP,<br><br>   Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   Respondent. | **MEMORANDUM DECISION AND ORDER DENYING [1] MOTION TO VACATE SENTENCE**<br><br>Case No. 2:20-cv-00777-DBB<br><br>District Judge David Barlow |

Before the court is Scott Ray Bishop's motion to vacate a criminal conviction and sentence pursuant to 28 U.S.C. § 2255.[1] Bishop contends he received ineffective assistance of counsel at trial and on appeal and argues that his waiver of the right to representation by counsel was not valid.[2] Having considered the briefing, exhibits, and relevant law, the court rules as follows.

## BACKGROUND

On December 14, 2016, a grand jury issued an indictment charging Bishop with
(1) "unlawfully engaging in the business of manufacturing machineguns" under 26 U.S.C.
§ 5861(a), and (2) "illegal possession and transfer of machineguns" under 18 U.S.C. § 922(o).[3]

---

[1] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 1.

[2] *United States v. Bishop*, Case No. 2:16-cr-00662, Doc. 1. To avoid confusion the court refers to documents filed in the underlying criminal case as "Doc. #" and refers to documents filed in the instant collateral challenge as "ECF No. #."

[3] *See generally* Doc. 1.

The court appointed Federal Public Defender Spencer Rice as defense counsel on January 17, 2017.[4] Defense counsel Daphne Oberg appeared as co-counsel for Bishop on March 17, 2017.[5]

On November 28, 2017, Bishop, through counsel, filed a motion requesting a *Faretta* hearing.[6] Specifically, Bishop expressed his "sincere desire to represent himself during his criminal jury trial" and requested that "the court conduct a *Faretta* hearing as soon as possible so that Mr. Bishop can exercise his right to self-representation."[7] The court held the hearing on December 12, 2017.[8] After inquiring into the reasons for the request and notifying Bishop of the consequences of waiving counsel, the court granted the motion allowing Bishop to represent himself.[9] Bishop also requested and the court required that Rice and Oberg serve as standby counsel.[10]

Bishop represented himself during a jury trial held from January 16–19, 2018.[11] The jury convicted Bishop of both counts.[12] On February 2, 2018, Bishop filed a motion requesting reappointment of his prior counsel, and the court granted it four days later.[13] Standby counsel Rice and Oberg were reappointed as defense counsel.[14] On May 24, 2018, the court sentenced Bishop to 33 months in prison followed by 36 months of supervised release.[15]

---

[4] Doc. 7.

[5] Doc. 14.

[6] Doc. 25; *see generally Faretta v. California*, 422 U.S. 806 (1975).

[7] *Id.*

[8] Docs. 37, 78.

[9] *Id.*

[10] *Id.*

[11] Docs. 46, 47, 48, 49, 50.

[12] Doc. 58.

[13] Docs. 59, 60.

[14] *Id.*

[15] Docs. 67, 68.

Bishop filed a direct appeal and presented four issues for review.[16] He argued that (1) "the district court violated Mr. Bishop's right to present a defense by precluding him from testifying on critical facts of this case;" (2) "the district court failed to instruct the jury on the critical element, mens rea," of the machine gun manufacture count; (3) "the district court erred by repeatedly allowing inadmissible hearsay as to [Bureau of Alcohol, Tobacco, and Firearms and Explosives] concerns about the legality of Mr. Bishop's device;" and (4) "the district court erred by allowing the expert to state the law and issue conclusory factual statements absent any explanation."[17] On June 10, 2019, the Tenth Circuit affirmed.[18] The Supreme Court denied certiorari on June 15, 2020.[19]

Bishop filed the instant collateral challenge motion on November 2, 2020.[20] Respondent filed a response on November 23, 2020.[21] Bishop raises three issues for review: (1) whether his pre-trial counsel provided constitutionally ineffective assistance by failing to investigate his case; (2) whether he was denied his constitutional right to the assistance of counsel when the court allowed him to represent himself; and (3) whether his appellate counsel provided constitutionally ineffective assistance by failing to raise on direct appeal his waiver of counsel.[22]

---

[16] Doc. 71; Appellant's Opening Brief, *United States v. Bishop*, 2018 WL 5907018 (C.A.10), *1.

[17] *Id.*

[18] Doc. 94; *United States v. Bishop*, 926 F.3d 621 (10th Cir. 2019)*, cert. denied*, 141 S. Ct. 115 (2020).

[19] Doc. 97.

[20] ECF No. 1.

[21] ECF No. 2.

[22] ECF No. 1.

## DISCUSSION

I.   **Bishop Has Not Shown That Pre-Trial Counsel Provided Ineffective Assistance.**

Bishop argues that he was denied his Sixth Amendment constitutional right to assistance of counsel when his court-appointed counsel failed to investigate witnesses, failed to investigate the only viable defense available to Bishop, and failed to take seriously Defendant's claim of actual innocence.[23]

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."[24] "[C]ourts are free to address these two prongs in any order."[25] Indeed, because a petitioner must meet both prongs, the court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."[26]

When evaluating the performance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[27] In other words, the court's review "must be highly deferential,"[28] and a petitioner challenging counsel's performance "bears a heavy burden"

---

[23] ECF No. 1 at 4. In his memorandum in support of the motion, Bishop also cites *United States v. Cronic* and the Supreme Court's identification of situations in which prejudice under *Strickland* may be presumed without inquiry into actual performance of counsel. 466 U.S. 648 (1984). However, Bishop does not contend that any of the exceptions apply in this case.

[24] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[25] *Ellis v. Raemisch*, 872 F.3d 1064, 1085 (10th Cir. 2017) (internal quotation marks omitted) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011)).

[26] *Id.* (quoting *Strickland*, 466 U.S. at 697); *see Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010) (observing that if a movant "is unable to show either 'deficient performance' or 'sufficient prejudice,' his claim of ineffective assistance necessarily fails").

[27] *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted).

[28] *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996).

to overcome the strong presumption of constitutionally adequate assistance.[29] The movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[30]

There is record evidence that counsel were actively engaged in defending Bishop. Prior to the order making them standby counsel, defense counsel stated that they were working with the government to acquire discovery on a hard drive, were reviewing potential expert witness testimony, were interviewing many out-of-state witnesses, and were pursuing a potential plea agreement.[31] Bishop cites *United States v. Medlock* for support that counsel's performance was deficient, but the court in that case found that "failure to conduct any pretrial investigation constitutes a clear instance of ineffectiveness."[32] As noted above, the record shows that is not what happened here.

Nevertheless, Bishop asserts that he was denied effective assistance when counsel failed to make a reasonable investigation into the case.[33] Specifically, he argues that counsel failed to contact Bishop's friend and potential witness, Skyler Hamilton, as well as another possible witness, Bill Durie, a purchaser of Bishop's gun-modification kits.[34] Hamilton had seen the kit installed and agreed to testify.[35] But Bishop fails to demonstrate that a failure to interview Hamilton was outside the bounds of professional conduct. Counsel may have concluded that Hamilton's testimony would have been unhelpful in substance or in form due to the lack of

---

[29] *Byrd*, 645 F.3d at 1168 (citation and internal quotation marks omitted).

[30] *Strickland*, 466 U.S. at 687 (1984).

[31] *See* Docs. 15, 17, 19, 23.

[32] 645 F. App'x 810, 815 (10th Cir. 2016).

[33] ECF No. 1-3 at 6; ECF No. 1 at 4.

[34] ECF No. 1-3 at 6.

[35] *Id.*; *see* ECF No. 1-2 at ¶¶ 4, 6.

weight a jury might assign to the testimony of Bishop's friend. Indeed, after Bishop decided to represent himself, Hamilton later testified at Bishop's trial, and Bishop was still convicted. Regarding the other potential witness, Bill Durie, Bishop fails to convincingly explain that Durie would have helped him prevail at trial. Moreover, Bishop decided to dismiss his appointed counsel before trial, giving him a free hand to have called Durie at trial, just as he did with Hamilton.[36] Accordingly, given the court's highly deferential review and strong presumption of reasonable professional assistance, the court cannot find that no reasonable counsel would have declined to follow up with either witness. The court does not conclude that counsel's performance was deficient. Even if it were, Bishop fails to establish any prejudice.[37]

Bishop further argues that counsel was deficient in their work with an expert witness.[38] In Bishop's words, the expert "refused to do more than test a kit obtained from the prosecution" and refused to "discuss hypotheticals."[39] Bishop alleges that he asked the expert about "testimony he could give about how a kit completed with a notch or a completed kit used with a shortened disconnector could have been designed and intended to operate differently than portrayed by the prosecution."[40] The expert witness allegedly refused to discuss it.[41] Even if true, this exchange does not show objectively deficient performance of counsel. An expert's unwillingness to support a defendant's preferred defense does not make counsel's assistance constitutionally

---

[36] Bishop contends that he "did not contact Mr. Billy Durie, because at this detention hearing, he was forbidden from contacting any purchasers of the kit." ECF No. 1-3 at 5. But Bishop does not contend that he raised this issue with the District Court judge, noticed Durie as a witness, or attempted to call him as a witness at trial. The court cannot find that a violation of constitutional rights occurred under these circumstances.

[37] *See Strickland*, 466 U.S. at 687.

[38] ECF No. 1-3 at 5.

[39] *Id.* at 6.

[40] *Id.* at 5–6.

[41] *Id.* at 6.

infirm, at least not under these facts. Relatedly, Bishop contends that counsel refused to "seek an expert witness that would consider Mr. Bishop's actual innocence defense."[42] This conclusory assertion falls well short of overcoming the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[43] As noted earlier, Bishop also waived his appointed counsel pretrial. From that point on, he was free to conduct his own defense pretrial and at trial in any way he saw fit.[44] Bishop does not contend that he made an effort to retain a different expert who would support his views. He does not assert that he was able to find any expert who would support his preferred defense. He also does not allege that he sought or was denied additional time to secure such an expert. On the record before the court, there is no basis to conclude that counsels' decisions related to the preparation of expert witnesses was objectionably unreasonable or that they caused Bishop prejudice at this trial.

For all the reasons discussed in this section, Bishop has not carried the "heavy burden" of overcoming the strong presumption that counsel, pre-trial or on standby, provided constitutionally inadequate assistance.[45] Petitioner's request for relief on this issue is denied.

---

[42] *Id.* at 7.

[43] *Byrd*, 645 F.3d at 1168 (citation and internal quotation marks omitted); *see Strickland*, 466 U.S. at 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

[44] *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (noting that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'"); *see also id.* at 834 ("The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." (citation and internal quotation marks omitted)).

[45] *Byrd*, 645 F.3d at 1168 (citation and internal quotation marks omitted). The court further notes that prior to waiving counsel, Bishop expressed satisfaction with his counsel, reported that he had no concerns with them, indicated that they had answered all his legal questions, and told the court that his counsel "have been great." Doc. 78 at 11.

## II.     Bishop Has Not Shown that His Waiver of the Right to Representation by Counsel Was Invalid.

Bishop also argues that he was denied his Sixth Amendment constitutional right to

assistance of counsel when the trial court granted his motion to waive his right to counsel,

relegating both defense counsel appointed for him to standby status and allowing him to

represent himself at trial.[46]

"A criminal defendant has a constitutional and a statutory right to waive his right to

counsel and represent himself at trial."[47] For the waiver to be effective, there must be "a showing

on the record that the defendant who elects to conduct his own defense has some sense of the

magnitude of the undertaking and the hazards inherent in self-representation when he made the

election."[48] The court "must ensure the defendant is 'aware of the dangers and disadvantages of

self-representation, so that the record will establish that he knows what he is doing and his

choice is made with eyes open.'"[49] The waiver must be made "voluntarily" as well as

"knowingly and intelligently."[50] There is a "strong presumption against the waiver of the

constitutional right to counsel."[51]

Bishop challenges both the "voluntary" and the "knowing and intelligent" nature of his

waiver.[52] Bishop argues that his waiver was not voluntary, noting that a "defendant's waiver is

---

[46] ECF No. 1 at 5.

[47] *United States v. Akers*, 215 F.3d 1089, 1096–97 (10th Cir. 2000) (citing *Faretta*, 422 U.S. at 807); 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.").

[48] *United States v. Padilla*, 819 F.2d 952, 956 (10th Cir. 1987).

[49] *United States v. Hamett*, 961 F.3d 1249, 1255 (10th Cir. 2020) (citations omitted).

[50] *United States v. Taylor*, 113 F.3d 1136, 1140 (10th Cir. 1997).

[51] *United States v. Williamson*, 806 F.2d 216, 219 (10th Cir. 1986) (quoting *United States v. Weninger*, 624 F.2d 163, 164 (10th Cir. 1980)).

[52] ECF No. 1-3 at 6–11.

involuntary if he is forced to choose between incompetent counsel or appear pro se."[53] This legal principle has no application here. For the reasons stated previously, Bishop has failed to demonstrate that his counsel were inadequate, so his reliance on that argument to undermine the voluntariness of his waiver must fail.[54]

Indeed, the record evidence is clear that Bishop's waiver was voluntary. Through counsel, Bishop filed a motion indicating his "sincere desire" to represent himself and the court held the requested *Faretta* hearing on December 12, 2017.[55] In the hearing, the court addressed Bishop directly, asking "Is it your desire to represent yourself in the upcoming trial?"[56] Bishop answered, "It is, Your Honor."[57] When asked why he wanted to represent himself, Bishop said:

> I believe that I have the ability and maybe the more clear vision of my defense and how I would like to proceed on that. My counsel have been great. They have been very good to work with, but I think there are things that I would like to present that I am not sure that they can present in the way that I would like to.[58]

Throughout the remainder of the hearing, the court asked various questions testing Bishop's desire to represent himself and recognition of what he was giving up.[59] Accordingly, the record reflects Bishop's clear and unequivocal intent to represent himself. His waiver was voluntary.

Bishop also argues that his waiver was not "knowing and intelligent." For a waiver to be effective, there must be record evidence that the defendant "has some sense of the magnitude of

---

[53] *Id.* at 7 (quoting *United States v. Williamson*, 859 F.3d 843, 862 (10th Cir. 2017)).

[54] Though the court does not rely on it, it must be noted that Bishop also repeatedly expressed his satisfaction with his counsel. At the *Faretta* hearing, Bishop stated "[t]hey have been great" and categorically denied any concerns about their representation. Doc. 78 at 4, 10–11. After his trial, he then moved the court to reappoint these same counsel to represent him. Doc. 59.

[55] *See* Docs. 25, 37, 78.

[56] Doc. 78 at 3.

[57] *Id.*

[58] *Id.* at 4.

[59] *See id.* at 3–20.

the undertaking and the hazards inherent in self-representation when he made the election."[60] The "tried-and-true method"[61] for making this assessment is a "waiver hearing, customarily referred to as a *Faretta* hearing."[62] The defendant should be apprised of "'the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."[63] There is no prescribed "formula or script to be read to a defendant who elects to proceed without counsel."[64] Instead, the court "eschews formalism in favor of pragmatism"[65] in making its determination. At bottom, "*Faretta* hearings are intended to ensure 'that the defendant is not unwittingly or impulsively disposing of this constitutional right to counsel.'"[66] They are "only a means to an end of ensuring a voluntary and intelligent waiver . . . ."[67]

As noted above, a *Faretta* hearing was held. [68] Bishop asserts multiple problems that he contends undermined his waiver of counsel. Bishop's first specific objection is that "due to counsel's ineffectiveness (per Ground 1), Mr. Bishop was forced to make a choice between ineffective counsel and proceeding pro se."[69] As discussed previously, Bishop has failed to demonstrate that his counsel were ineffective, so this argument is unavailing.

---

[60] *Padilla*, 819 F.2d at 956.

[61] *Vann*, 776 F.3d at 763.

[62] *Hansen*, 929 F.3d at 1249.

[63] *Hamett*, 961 F.3d at 1255 (citations omitted).

[64] *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

[65] *Hansen*, 929 F.3d at 1251.

[66] *Id.* (citation omitted).

[67] *Hamett*, 961 F.3d at 1256 (citing *Hansen*, 929 F.3d at 1251).

[68] *See* Docs. 25, 37, 78.

[69] ECF No. 1-3 at 8.

Bishop's next argument is that "nothing in the record indicates that Mr. Bishop knew he would be required to comply with all of the rules and procedures of court,"[70] making his case like *United States v. Hansen*, 929 F.3d 1238 (10th Cir. 2019). But the court here clearly told Bishop that he would have to comply with the rules:

> You're aware of the fact that you will be required, acting as your own counsel, if that in the end is what you decide to do, you will be required to comply with all of the court rules and the Rules of Procedure and the Rules of Evidence and all of the rules and procedures that pertain in a jury trial?[71]

Bishop responded: "I believe I do, Your Honor."[72] While Bishop argues that he did not understand or agree "to adhere to those procedures and rules," he was told that he would need to comply with the rules and acknowledged same on the record. Indeed, the Tenth Circuit Court of Appeals noted in its opinion on Bishop's appeal that: "[a]t the hearing held pursuant to *Faretta v. California*, 422 U.S. 806 (1975), Defendant acknowledged that he would 'be required to comply with all of the court rules and the Rules of Procedure and the Rules of Evidence and all of the rules and procedures that pertain in a jury trial.'"[73] Finally, *Hansen* is factually inapposite. In that case, the defendant first acknowledged that there are rules "'that all of the parties before the court follow,'" but then expressly denied that he would be required to follow the rules of evidence and procedure.[74] Defendant followed his denial up with statements like "I shouldn't even be in this court because I am not the defendant," "President FDR and [C]ongress concocted

---

[70] *Id.* at 9.

[71] ECF No. 1-4 at 4.

[72] *Id.*

[73] *United States v. Bishop*, 926 F.3d 621, 625 (10th Cir. 2019), *cert. denied*, 141 S. Ct. 115 (2020).

[74] *Hansen*, 929 F.3d at 1246.

a fraud upon the American people," and "I can't represent myself because I am myself."[75] The

factual issues present in *Hansen* are absent here.

Bishop then argues that the trial court erred because "no discussion occurred by which

the trial judge could ensure that Mr. Bishop knew what the elements of the charges actually

were" and he "was never even notified by the court which statutes he was charged with

offending . . . ."[76] During the hearing, the following colloquy occurred:

> THE COURT:  Do you understand the nature of the charges against you?
>
> MR. BISHOP:  I do, Your Honor.
>
> THE COURT:  There is a two-count indictment, count one charging you with
> unlawfully engaging in the business of manufacturing machine guns, and count
> two charging you with the illegal possession and transfer of machine guns. Do
> you feel that you understand what the elements of those charges are and the
> burden of proof that rests with the government in proving them?
>
> Mr. BISHOP:  I believe so, Your Honor.[77]

One of the *Von Moltke* topics is "the nature of the charges [and] the statutory offenses

included within them."[78] Here, the court explained that there were two counts in the indictment

and described those counts in easy-to-understand language. Bishop did not state that he was

unfamiliar with the indictment and the charges in it or otherwise give the judge cause to be

concerned. Instead, Bishop told the court that he understood the nature of the charges against him

and that he understood the elements of those charges. It is true that the court did not reference the

statutory cites for those counts or further probe Bishop's answer that he understood the elements

of the charges. Having provided a description of the charges and credited Bishop's statements

---

[75] ECF No. 1-3 at 9.

[76] *Id.* at 10.

[77] Doc. 1-4 at 6–7.

[78] *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948).

that he understood the charges and their elements, the court moved on to other issues. Bishop cites no cases with similar facts in which a court has found a violation of the Constitution on this basis. Based on the facts before it, this court cannot do so here either.

Bishop also notes that the district court did not discuss the "range of allowable punishments." However, Bishop previously had been advised, on the record, of the penalties he faced during his arraignment, where he was told "both counts carry the same maximum penalty, that is a period of incarceration of up to 10 years, and a fine of $250,000, as well as a supervised release of three years."[79] The Magistrate Judge then asked him, "Mr. Bishop, do you understand those maximum possible penalties?"[80] Bishop responded "Yes, sir."[81]

The trial judge should have reminded Bishop of the penalties he faced. But the record here is clear that Bishop had earlier been advised, on the record, that he faced 10 years incarceration, 3 years of supervised release, and a fine of $250,000. So this case is not like *Hamett*, where the record showed that the court provided defendant incorrect information about the possible penalties he faced.[82] Based on the totality of the record here, this court cannot conclude that the trial court's failure to remind Bishop of what he already had been told by the Magistrate Judge and acknowledged on the record means that Bishop's eyes were not open. The record shows that Bishop was told he faced 10 years' incarceration if convicted at trial.[83] He was

---

[79] Doc. 90, 4–5.

[80] *Id.* at 5.

[81] *Id.*

[82] *Hamett*, 961 F.3d at 1258.

[83] Bishop also appears to argue that he was confused about the penalties he faced because his counsel told him "the prosecution said he could plead guilty, and he would get 3 years of supervised release with no prison time." Doc 1-3 at 2. But Bishop did not plead guilty, choosing instead to exercise his right to trial. Also, the only statement from a judge about the penalties Bishop faced were clear and unrelated to the government's apparent plea offer. Doc. 90, 4–5.

convicted at trial and ultimately received a sentence of 33 months' incarceration.[84] The court does not conclude that the trial judge's failure to repeat the maximum possible sentence renders Bishop's waiver unwitting or unintelligent.

Bishop also argues, in passing, that he was not apprised of "possible defenses to the charges and circumstances in mitigation thereof" or "any other facts essential to a broad understanding of the whole matter."[85] Regarding defenses, Bishop told the trial court that he wanted to waive his right to counsel because he had "the ability and maybe the more clear vision of my defense and how I would like to proceed on that."[86] He also stated that "there are things that I would like to present that I am not sure [defense counsel] can present in the way that I would like to."[87] As noted previously, Bishop also told the court that he understood the elements of the charges against him.[88] Finally, defense counsel stated that "this is a case where we have been meeting with Mr. Bishop often to prepare for his defense . . . ."[89] In short, the record shows that Bishop was relegating his counsel to standby status because he did not like how they were defending his case. He told the court that he understood the elements of the charges against him, which is where his defense would focus. He also had been actively engaged in his defense already, meeting with his appointed counsel many times. On this record, the court cannot find that the Constitution required more.

Regarding "any other facts essential to a broad understanding of the whole matter," the trial judge asked various other questions and provided multiple warnings. These included:

---

[84] *See* Docs. 58, 68.

[85] ECF No. 1-3 at 10.

[86] Doc. 1-4 at 4.

[87] *Id*.

[88] *Id.* at 7.

[89] *Id.* at 10.

confirming that defense counsel already had explained the disadvantages of self-representation (Bishop: "they have been very clear about them");[90] ascertaining Bishop's lack of training in the law;[91] learning that Bishop had previously represented himself successfully in a traffic violation trial;[92] confirming that Bishop felt he had studied the issue sufficiently to knowingly and intelligently forgo the benefits of counsel;[93] inquiring about Bishop's physical and mental health;[94] and determining that Bishop felt he knew how to deliver opening and closing statements.[95]

The trial court also warned Bishop about waiving his right to counsel multiple times during the *Faretta* hearing, telling Bishop that he would be at a disadvantage because "[y]ou're not a trained lawyer,"[96] warning him that the law was sufficiently complex that "not even we lawyers know the answer to everything,"[97] and asking Bishop whether he was aware of the "sage advice" that "only a fool has himself for a client."[98] The trial judge also offered one final admonition:

> From my vantage point, I want to encourage you to reconsider having these fine lawyers represent you. I know you have told me you don't think they can present what you said a few minutes ago, that they are not sure that they can present what you want to present the way that you feel you can, and you have the right to represent yourself, but I would urge you to think hard about it, because there are a

---

[90] *Id.* at 4.

[91] *Id.* at 5–6.

[92] *Id.*

[93] *Id.* at 6.

[94] *Id.*

[95] *Id.* at 7.

[96] *Id.*

[97] *Id.* at 8.

[98] *Id.*

lot of advantages to having a trained lawyer whose only job is to do what is in your best interest in representing you before a jury.[99]

Bishop responded: "I appreciate that, Your Honor. I would love to have them as standby counsel, but I would like to represent myself."[100] Defense counsel then stated "[t]hat is something we have discussed with Mr. Bishop about at length" and agreed to serve as standby counsel at trial, put Bishop through a mini trial advocacy course, help him with electronic filings, and assist "in any other way."[101] Defense counsel also expressed no concerns about Bishop's "competence to represent himself," adding it "goes against maybe our advice and we want to represent him, and we think we can go a good job, and we still have a great relationship with him and we respect his decision to exercise his right to represent himself."[102]

The waiver of counsel inquiry is both "tried-and-true" and required to be thorough.[103] It also is to be viewed pragmatically, not formalistically.[104] The trial court has the responsibility to make the proper inquiries, but the ultimate question is whether defendant made a knowing and intelligent waiver, not an impulsive and unwitting one.[105] In sum, the record shows that is what happened here: Bishop understood what he was doing and "his choice [was] made with eyes open."[106] Accordingly, Bishop's second ground for relief is denied.

---

[99] *Id.* at 9.

[100] *Id.*

[101] *Id.*

[102] Doc. 78 at 10. Though the court assigns it no weight, it notes that the government also warned that "it often does not go well for pro se litigants in the federal system" and stated its agreement with the court that Bishop was making "a dangerous move." *Id.*

[103] *Hamett*, 961 F.3d at 1255 (citation omitted).

[104] *Hansen*, 929 F.3d at 1251.

[105] *Id.*

[106] *Faretta*, 422 U.S. at 835.

### III.     Bishop Has Not Established Ineffective Assistance of Appellate Counsel.

Bishop also argues that he was denied his Sixth Amendment constitutional right to assistance of counsel when Bishop's appellate counsel failed to raise the ineffective assistance of counsel and waiver of counsel issues discussed above.[107]

The *Strickland* standard governs a claim of ineffective assistance of appellate counsel.[108] Consequently, Bishop must establish both deficient performance of counsel and prejudice to the defense as a result.[109] The court must consider whether appellate counsel was objectively unreasonable in failing to raise the claim on direct appeal and, "if so, whether there is a reasonable probability that, but for his counsel's unreasonable failure" to raise the claim, Bishop "would have prevailed on his appeal."[110] "When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue."[111]

As discussed in detail above, the issues raised by Bishop lack merit. The failure to raise a non-meritorious issue on appeal does not satisfy the showing required to establish constitutionally deficient performance of counsel.[112] Accordingly, Bishop's Ground Three is denied.

---

[107] Doc. 1-3 at 11. Bishop's Motion only identifies the waiver of counsel issue under Ground Three, but his memorandum attempts to invoke both issues. Because the result is the same for both issues, the court makes no distinction here.

[108] *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001).

[109] *Id.*

[110] *Id.* (citation and internal quotation marks omitted).

[111] *Id.* (citation and internal quotation marks omitted).

[112] *See Neill*, 278 F.3d at 1059 (holding that appellate counsel was not "objectively unreasonable" for failing to raise a non-meritorious issue on appeal).

**ORDER**

For the reasons stated in this Memorandum Decision and Order, the court DENIES Bishop's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.[113] The petition is DISMISSED with prejudice.[114] Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the court determines that Bishop has failed to make a substantial showing that he has been denied a constitutional right and therefore DENIES a certificate of appealability.

Signed May 5, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[113] ECF No. 1.

[114] *Id.*